

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-22-2008

# USA v. Staples

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4791

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Staples" (2008). *2008 Decisions*. Paper 1544.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1544

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4791
_____

UNITED STATES OF AMERICA

v.

JEROME STAPLES,

*Appellant*

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 05-cr-00390)
District Judge: Honorable William W. Caldwell


_____


Submitted Under Third Circuit LAR 34.1(a)
December 11, 2007

Before: McKEE, CHAGARES, and HARDIMAN, *Circuit Judges*.

(Filed: February 22, 2008)


_____


OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

A jury convicted Jerome Staples of violating 18 U.S.C. § 922(g)(1) and the District Court sentenced him to the bottom of his adjusted Guidelines range. Staples appeals his conviction and sentence. We will affirm.

**I.**

Because Staples challenges the sufficiency of the evidence, a more detailed explication of the facts is required than is typical of our not precedential opinions. We review the facts in the light most favorable to the Government, as the verdict winner. *United States v. Applewhaite,* 195 F.3d 679, 684 (3d Cir. 1999).

May 31, 2004 was Kenny White's twenty-third birthday. Instead of celebrating it in the usual manner, White was duped into traveling to Staples's apartment, where he was assaulted and battered in retribution for having beaten Jamar Wilson. Present at the scene — in addition to Staples and Wilson — were Rex Dickey and Stanley Summers, who was seventeen years-old at the time.

After Staples and Dickey went upstairs, Staples picked up a Tec[1] firearm, stated that he intended to confront White, and instructed Dickey to "stand back on the wall" when the two returned downstairs. Summers saw Staples hand Dickey the Tec as they descended to rejoin the group. Dickey then brandished the Tec, inserted a clip, and

---

[1] It is unclear whether the firearm was a Tec 9 or Tec 22.

2

cocked it. When White saw the firearm, he asked Dickey what he was doing with it. Dickey replied that Staples had told him to go get it. All four witnesses believed the Tec was a real firearm.

Staples then confronted White, accusing him of falsely representing that he was a "Blood." Staples struck White, who fought back until Staples told him to stop resisting and instructed Dickey to shoot if White disobeyed. Staples then ordered White to stand against a wall and take a beating from Wilson. White complied, and no shots were fired. Staples then threw White out of the apartment and told him that he and his girlfriend would be killed unless they left town.

After White reported the incident to police, Detective David Lau obtained a warrant and searched Staples's apartment. Although Lau did not recover the Tec used in the assault on White, he did find a .32 caliber revolver. A few days later, Staples admitted to Detective Lau that he had assaulted White, but denied that a firearm was present or that anyone else participated in the fight. Staples also denied that the revolver was his, claiming that Summers had left it in his apartment.

## II.

A.  *Sufficient Evidence Supported Staples's Conviction Under 18 U.S.C. § 922(g)(1)*

Staples claims that there is insufficient evidence to support the jury's finding that the Tec brandished during the assault on White was a real firearm or that he possessed it.

3

Our review is deferential and "[w]e must affirm the convictions if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." *United States v. Coyle,* 63 F.3d 1239, 1243 (3d Cir. 1995). "We do not re-weigh the evidence presented at trial or reassess the credibility of the witnesses." *United States v. Hedaithy*, 392 F.3d 580, 605 (3d Cir. 2004) (citation omitted).

Contrary to Staples's argument, the other four men at the scene all testified that they saw the Tec and believed it was real. White, who was familiar with guns, saw Dickey cock the Tec and allowed himself to be beaten for fear of being shot. Dickey was "sure it was a gun," and believed it to be loaded, which is why he refrained from pointing it directly at White. Wilson said it "looked like a gun" and Summers testified that "I know it was a gun in front of me." This veritable chorus of consistent testimony was more than sufficient evidence to establish that the Tec was, in fact, a firearm.[2]

Staples claims that mere eyewitness testimony is insufficient evidence because the Tec was never recovered. But courts of appeals have held that eyewitness testimony is sufficient even if the gun is not introduced into evidence. *See United States v. Anderson,* 78 F.3d 420, 423 (8th Cir. 1996); *accord United States v. Buggs,* 904 F.2d 1070, 1076

---

[2]  These facts differ from those in the lone case that Staples cites, which is, coincidentally, *Staples v. United States,* 511 U.S. 600 (1994). There, the defendant did not know that his gun had the requisite characteristics to classify it as a machine gun *as a matter of law. See id.* at 609. Here, the jury had to decide only that Staples knew the difference between a real gun and a fake one.

(7th Cir. 1990). We have no reason to disagree with our sister courts on this issue, especially on the facts of this case, where four eyewitnesses testified that the Tec was real. Courts have deemed weaker evidence sufficient to support a finding of possession of a firearm. *See, e.g.*, *United States v. Smith,* 49 F.3d 475, 478 (8th Cir. 1995) (testimony of one eyewitness adequate); *see also United States v. Jones*, 16 F.3d 487, 489-91 (2d Cir. 1994) (evidence sufficient where bank employees saw and described gun even though gun was never recovered, witnesses were unfamiliar with guns and did not observe gun at close range).

Staples next argues that the evidence was insufficient to establish that he actually or constructively possessed the Tec. But Summers testified that he saw Staples hand Dickey the Tec as they descended the staircase. Therefore, we cannot say that "no reasonable juror could accept the evidence as sufficient to support the conclusion" that Staples actually possessed the Tec. *See United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006).[3]

Finally, even if the jury disbelieved Summers, the evidence supports the conclusion that Staples constructively possessed the Tec. Viewed in the light most

---

[3] Courts have held that the possession element of § 922(g) was satisfied "even if a felon held a firearm for a mere second or two." *United States v. Adkins,* 196 F.3d 1112, 1115 (10th Cir. 1999); *see also United States. v. Van Sach*, 458 F.3d 694, 702 (7th Cir. 2006). Moreover, we have found evidence sufficient to support a conviction, even where "the evidence is not overwhelming" and "comes from only one witness whose veracity was certainly open to question." *United States v. Ammar*, 714 F.2d 238, 251 (3d Cir. 1983) (citation omitted).

favorable to the Government, the evidence showed that Dickey came downstairs with the gun as ordered by Staples. During the attack, Staples instructed Dickey to hold the gun and to shoot White if he fought back. White complied with Staples's orders to stop resisting, and Dickey stood ready to shoot him if he disobeyed. Evidence that a defendant instructed another to use a weapon amounts to constructive possession.[4]

In sum, when viewed in the light most favorable to the Government, the evidence showed that the Tec used to threaten White was real, that Staples knew it was real, and that Staples actually and constructively possessed the Tec.

B.  *The District Court Did Not Err In Admitting Expert Testimony Of An ATF Agent*

Staples claims that the District Court erred under Rules 702 and 703 of the Federal Rules of Evidence when it admitted testimony of an ATF Special Agent to prove the interstate commerce requirement of § 922(g)(1). District courts have wide latitude to determine whether to admit expert testimony, s*ee Kannankeril v. Terminix Int'l., Inc.,* 128 F.3d 802, 806 (3d Cir. 1997), and we will disturb a trial court's exercise of discretion only

---

[4] *See, e.g., United States v. Galvan*, 453 F.3d 738, 742 (6th Cir. 2006) (evidence that defendant told another to "bring a gun" to drug deal sufficient for constructive possession despite fact that defendant was unaware whether he followed instruction); *see also Van Sach*, 458 F.3d at 702 (upholding jury instruction that possession includes knowingly having power and intention to exercise dominion or control, directly or indirectly); *United States v. Mendoza,* 341 F.3d 687, 695 (8th Cir. 2003) (constructive possession satisfied when defendant told undercover officer that man holding rifle "was watching the transaction and would take care of him if anything happened").

if no reasonable person would adopt the trial court's view. *See Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 412 (3d Cir. 2002).

Staples's Rule 702 argument hardly merits comment because it is plainly contrary to our precedents. *See, e.g., United States v. Singletary,* 268 F.3d 196, 197-98 (3d Cir. 2001) (ATF agent's expert testimony regarding origin of weapon sufficient to establish interstate commerce element of § 922(g)); *see also United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004) (same).

Nor is Staples's Rule 703 argument persuasive. After four witnesses testified that the firearm was a Tec, it was appropriate for Special Agent Endy to rely on that testimony as the basis for his expert opinion that the firearm at issue traveled in interstate commerce. Moreover, Endy was entitled to rely upon his experience and the ATF database and reference materials. *See, e.g.*, *United States v. Corey,* 207 F.3d 84, 88-92 (1st Cir. 2000); *United States v. Larry*, 126 F.3d 1077, 1078-79 (8th Cir. 1997); *United States v. Ware*, 914 F.2d 997, 1002 (7th Cir. 1990).

We also reject Staples's contention that Endy lacked sufficient contact with either the weapon or the manufacturer to satisfy Rule 703. Several courts have affirmed convictions based on an ATF expert's weapon-origin testimony which did not mention any contact with the manufacturer. *See Corey,* 207 F.3d at 90; *United States v. Floyd*, 281 F.3d 1346, 1347-49 (11th Cir. 2002); *United States v. Coleman,* 22 F.3d 126, 131

7

(7th Cir. 1994). Thus, the District Court did not err under Rule 703. *See Asplundh Tree Expert Co. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1207 (3d Cir. 1995).

> C.   *The District Court Did Not Err In Sentencing Staples*

We review the District Court's factual determinations in support of its sentence for clear error, and its ultimate sentence will be affirmed if it is reasonable. *See United States v. Grier*, 475 F.3d 556, 569 (3d Cir. 2007) (en banc). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 570 (citation, alterations, and internal quotation marks omitted). To determine whether the District Court acted reasonably in imposing a sentence, we must be satisfied that the court appropriately exercised its discretion by giving meaningful consideration to the relevant factors under 18 U.S.C. § 3553(a). *United States v. Kononchuk*, 485 F.3d 199, 204 (3d Cir. 2007).

> 1.   *The District Court Did Not Err In Applying USSG § 3B1.4*

Staples claims that the District Court erred in applying a two-level increase pursuant to USSG § 3B1.4 for use of a minor. The District Court found that Summers was seventeen years-old when Staples persuaded him to lie about both his involvement in the White beating and the ownership of the .32 caliber revolver. The record supports both findings.

8

On June 17, 2004, Summers told Detective Lau that he owned the revolver seized from Staples's apartment. At trial, however, Summers confessed that he had lied about numerous facts pertaining to *both* the ownership of the revolver and the circumstances surrounding the beating of White. Staples's girlfriend, Ashley Nelson, corroborated Summers's trial testimony.

Although no evidence at trial established Summers's age on June 10, 2004, the Presentence Report (PSR) noted that § 3B1.4 was applicable because Summers did not turn 18 until August 5, 2004. Staples's argument that Summers's age had to be established at trial is incorrect because "a sentencing judge may consider information that is largely unlimited as to kind or source." *United States v. Leekins*, 493 F.3d 143, 151 (3d Cir. 2007) (citation and internal quotation marks omitted). "This is true even if the conduct was not proved at trial, but came from a presentence report."[5] *See United States v. Pollard*, 986 F.2d 44, 47 (3d Cir. 1993) (citation omitted).

In addition, we reject Staples's suggestion that § 3B1.4 was imposed for conduct other than the crime of conviction. The District Court specifically stated: "Staples did make use of a person under the age of 18 in connection with the offense, with the offense for which he was convicted . . . ."

2. *The District Court Did Not Err In Applying USSG § 3C1.1*

---

[5] We note that Staples failed to object to the PSR on the ground that it misstated Summers's age.

9

Staples also argues that the District Court erred in applying a two-level increase for obstruction of justice pursuant to USSG § 3C1.1, claiming that there was no evidence that he unlawfully influenced anyone else or that he significantly impeded the investigation. We reject both of these arguments.

The District Court had ample evidence from which it could conclude that Staples persuaded both Nelson and Summers to lie to protect him, as prohibited by § 3C1.1. *See United States v. Amedeo,* 370 F.3d 1305, 1319 (11th Cir. 2004); *United States v. Madoch,* 108 F.3d 761, 766 (7th Cir. 1997). Additionally, we have no doubt that Staples impeded the investigation. At Staples's behest, Summers lied to Detective Lau in two separate statements, only coming clean before the grand jury. Nelson went even further, lying to Detective Lau to protect Staples, who was on parole and knew he would be returned to prison if he was connected to the Tec used in the White beating. Nelson's lying did not stop with Lau; indeed, she continued to lie all the way through her initial testimony to the grand jury.

3.      *The Sentence Was Reasonable*

Staples lastly claims that his sentence was unreasonable under *United States v. Booker*, 543 U.S. 220 (2005), because he was prosecuted in state court for the assault on White, and he was sent to prison after his supervised release was revoked. First, we note that although Staples pleaded guilty to simple assault and conspiracy to commit assault, he did not plead guilty to carrying a firearm without a license. Because possession of a

10

firearm under § 922(g) implicates different elements than simple assault or conspiracy to commit assault under Pennsylvania law, Staples did not suffer multiple punishments for the same offense. *See United States v. Watkins,* 339 F.3d 167, 176-77 (3d Cir. 2003). Nor do we accept Staples's contention that the revocation of his supervised release in 2005 was punishment for conduct prohibited by § 922(g). As the Supreme Court has made clear, post-revocation sanctions are "part of the penalty for the initial offense"; they are not punishment for the offense which triggers the revocation. *See Johnson v. United States*, 529 U.S. 694, 700 (2000). Finally, to the extent the District Court had any concerns about multiplicity of punishment, it properly and reasonably resolved those concerns by reducing Staples's sentence by ten months pursuant to USSG § 5G1.3.

Finally, we find no indication that the District Court failed to consider the relevant § 3553(a) factors. The trial court specifically noted that Staples had lied to avoid punishment, had violated his supervised release by arranging the White beating in the first place, and appeared to be undeterred by his previous clashes with the law. All of these factors were appropriate considerations under § 3553(a), and Staples has not argued that the District Court ignored other relevant considerations. Therefore, Staples's within-Guidelines sentence was both procedurally and substantively reasonable.

### III.

For the foregoing reasons, we will affirm the order of the District Court.

11